**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 8, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MIDAMERICA CONSTRUCTION
MANAGEMENT, INC., an Oklahoma
corporation,

      Plaintiff - Appellant,

v.

MASTEC NORTH AMERICA, INC.,
a Florida corporation, and
RENEGADE OF IDAHO, INC., an
Idaho corporation,

      Defendants - Appellees.

No. 04-6231

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. CIV-03-1561-R)**

---

Albert W. Murry, Murry Cox & Murry, Oklahoma City, Oklahoma, for Plaintiff-
Appellant.

Henry D. Hoss, McAfee & Taft, Oklahoma City, P.C., Oklahoma (Natalie K.
Ramsey, McAfee & Taft, Oklahoma City, Oklahoma, with him on the brief), for
Defendants-Appellees.

---

Before **EBEL** and **TYMKOVICH**, Circuit Judges, and **BROWNING**, District
Judge.*

_____

**EBEL**, Circuit Judge.

_____

In this case, we must determine whether a contract between two defendant
general contractors and a plaintiff subcontractor requires the general contractors
to pay the subcontractor for the work the subcontractor performed only if the
general contractors are first paid on their own contract with the project owner. In
making this determination, we address the type of language that constitutes a
"pay-if-paid" clause under both Texas and New Mexico law in a contract for a
private-sector construction project.

We AFFIRM the district court's grant of summary judgment to Defendants
MasTec North America, Inc. ("MasTec") and Renegade of Idaho, Inc.
("Renegade") on the claim of Plaintiff MidAmerica Construction Management,
Inc. ("MidAmerica") that Defendants breached their contract with Plaintiff by
refusing to pay Plaintiff for the work Plaintiff performed under the contract. We
do so because we determine that (1) the contract contains a "pay-if-paid" clause;
(2) this clause is enforceable under both Texas and New Mexico law; and (3) as a

_____

* Honorable James O. Browning, District Court Judge, United States
District Court for the District of New Mexico, sitting by designation.

- 2 -

result, Defendants need not at the present time pay Plaintiff for the work that Plaintiff performed under the contract, because Defendants have not been paid by project owner PathNet, Inc. ("PathNet") for that work.

## BACKGROUND

PathNet hired Defendant Renegade to help construct the New Mexico and Texas portions of a fiber optic network. Defendant MasTec subsequently purchased Renegade. On January 31, 2001, Defendants hired Plaintiff as a subcontractor to help install a buried conduit for fiber optic line. The parties' agreement was embodied in a written contract (the "Subcontract Agreement").

Plaintiff began performing under the Subcontract Agreement. Defendants made an initial payment of approximately $127,000 to Plaintiff in March 2001 for work performed in January and February of that year. However, after PathNet filed for bankruptcy in April 2001, Defendants refused to make any further payments to Plaintiff because Defendants asserted that they had not received payment from PathNet for the work Plaintiff performed.

In November 2003, Plaintiff brought suit against Defendants in the United States District Court for the Western District of Oklahoma, contending that Defendants owed it approximately $1.9 million for work performed under the Subcontract Agreement. The district court denied Plaintiff's motion for partial summary judgment and granted Defendants' counter-motion for summary

judgment on all Plaintiff's claims. Specifically, the district court held that a

provision in the Subcontract Agreement that provides that "all payments to

Subcontractor by Contractor are expressly contingent upon and subject to receipt

of payment for the work by Contractor from Owner," was

> unambiguous and makes Defendants (Contractor) receipt of payment
> for the work from PathNet (Owner) a condition precedent to payment
> of Plaintiff (Subcontractor). Thus, unless and until Defendants
> receive payment for the work in question from PathNet, Defendants
> have no duty to pay Plaintiff and Plaintiff acquires no right to
> enforce the promise of payment.

The court stated that:

> applying either New Mexico or Texas law or the law of both states,
> the court enforces the contract as written and holds that Defendants
> have no obligation to pay Plaintiff unless or until PathNet pays
> Defendants.

The court also noted that:

> because the Subcontract Agreement provides that it "may not be
> amended except by a writing signed by each of the parties," and may
> not be modified or waived except in writing signed by both parties,
> [Defendant's] single payment to [Plaintiff] could not effect a
> modification or waiver of the payment term making payment of
> [Plaintiff] "expressly contingent upon and subject to receipt of
> payment" by Defendants from PathNet.

Finally, the court found that a "termination clause" in the Subcontract Agreement

also barred Plaintiff's claims for breach of contract.[2]

---

[2] Plaintiff brought additional claims based on promissory estoppel, quantum
meruit, unjust enrichment, and account stated. The district court denied the
(continued...)

Plaintiff appealed from the district court's order and judgment.


## DISCUSSION

### I.      Jurisdiction, Standard of Review, and Choice of Law

Plaintiff's notice of appeal was timely filed.  See Fed. R. App. P.

4(a)(1)(A).  We exercise appellate jurisdiction over its appeal pursuant to 28

U.S.C. § 1291, reviewing the district court's grant of summary judgment de novo.

See Phillips v. New Hampshire Ins. Co., 263 F.3d 1215, 1218 (10th Cir. 2001).

The Subcontract Agreement provides that the contract "is governed by the

laws of the state where the Work is/was performed."  It is undisputed that

Plaintiff performed work pursuant to the Subcontract Agreement in Texas and

New Mexico.  Neither party asserts that only one of these two states' law should

apply; rather, both parties assert that both states' law should apply.  Thus, if the

Subcontract Agreement's choice-of-law clause is enforceable, we must apply both

Texas and New Mexico law in interpreting the agreement.

In cases like this one, where subject matter jurisdiction is based on

diversity of citizenship, federal courts must look to the forum state's choice-of-

law rules to determine the effect of a contractual choice-of-law clause.  See Lyon

---

²(...continued)
claims, and Plaintiff does not pursue them on appeal.

Dev. Co. v. Bus. Men's Assur. Co., 76 F.3d 1118, 1122 (10th Cir. 1996). Under the law of the forum state in this case, Oklahoma, "a contract will be governed by the laws of the state where the contract was entered into *unless otherwise agreed and unless contrary to the law or public policy of the state where enforcement of the contract is sought*." Williams v. Shearson Lehman Bros., Inc., 917 P.2d 998, 1002 (Okla. Civ. App. 1995) (emphasis added). Because in this case the parties agreed to be governed by the laws of Texas and New Mexico, we must determine whether the application of those states' laws to the interpretation of the Subcontract Agreement would violate the law or public policy of Oklahoma as expressed in the state's constitution, statutes, or judicial records. See Oliver v. Omnicare, Inc., 103 P.3d 626, 628-29 (Okla. Civ. App. 2004); see also Cameron & Henderson, Inc. v. Franks, 184 P.2d 965, 972 (Okla. 1947).

As is explained more fully below, we conclude that the Subcontract Agreement contains a "pay-if-paid" clause that is enforceable under both Texas and New Mexico law, making PathNet's payment of Defendants a condition precedent to Defendants' obligation to pay Plaintiff. Enforcing this clause does not yield a result that violates the law or public policy of Oklahoma. There are no Oklahoma cases interpreting "pay-if-paid" clauses, see John B. Hayes, Survey of Payment Provision and Trust Fund Statute: Oklahoma, 24 Construction Law. 20 (2004)—and thus there are no Oklahoma cases stating that Oklahoma does not

enforce such clauses. One frequently-cited Tenth Circuit case applying Oklahoma law, <u>Byler v. Great Am. Ins. Co.</u>, 395 F.2d 273 (10th Cir. 1968), suggests that Oklahoma courts would enforce a contractual provision that conditions payment upon the happening of a future event—such as payment of a general contractor by a project owner—if required to do so by plain and unambiguous contractual language. <u>See</u> <u>id.</u> at 276-77; <u>see also</u> <u>United States v. Mann</u>, 197 F.2d 39, 40-42 (10th Cir. 1952); <u>Moore v. Continental Cas. Co.</u>, 366 F. Supp. 954, 955-56 (W.D. Okla. 1973). There is no constitutional or statutory prohibition against "pay-if-

paid" clauses in Oklahoma.[3]  Therefore, we apply Texas and New Mexico law in

interpreting the Subcontract Agreement.

---

[3] As is explained more fully below, statutory prohibitions against "pay-if-paid" clauses typically take one of two forms: an antiwaiver provision in a state's mechanic's lien statute, or an outright ban on conditional payment provisions. Some legislatures also restrict the application of "pay-if-paid" clauses in order to permit subcontractors to pursue bond claims or lien actions. However, the Oklahoma legislature has not adopted any such measures that relate to "pay-if-paid" clauses in contracts for private-sector construction projects.

In November 2004—after the parties entered into the Subcontract Agreement, Plaintiff brought suit against Defendants, and the district court granted summary judgment to Defendants—the Oklahoma legislature's Fair Pay for Construction Act took effect. See Okla. Stat. tit. 15, §§ 621-627 (2004), renumbered as tit. 16, §§ 221-227 (2005). The act provides that:

> [t]he following are against the public policy of this state and are void and unenforceable:
>
> > 1. A provision, covenant, clause or understanding in, collateral to or affecting a construction contract that makes the contract subject to the laws of another state or that requires any litigation, arbitration or other dispute resolution proceeding arising from the contract to be conducted in another state; . . . .

Okla. Stat. tit. 15, § 627(B). We need not decide whether the act applies retroactively to the Subcontract Agreement because the act provides that "'[c]onstruction contract' means a written contract or subcontract awarded . . . for the purpose of making any *public* improvements or constructing any *public* building or making repairs to or performing maintenance on the same." Id. tit. 15, § 622(1); tit. 16, § 222 (emphasis added). Thus, the act could not apply to the Subcontract Agreement, which is for the purpose of constructing a *private* fiber optic network.

**II. The "Pay-if-Paid" Clause in the Subcontract Agreement**

**A. Legal and Contractual Framework**

Construction contracts often contain provisions referred to as "pay-when-paid" and "pay-if-paid" clauses. See Robert F. Carney & Adam Cizek, Payment Provisions in Construction Contracts and Construction Trust Fund Statutes: A Fifty-State Survey, 24 Construction Law. 5 (2004). Courts have not uniformly applied these terms. See id. ("Some courts refer to both provisions as 'pay-when-paid' clauses . . . ."). Still, the terms "pay-when-paid" and "pay-if-paid" refer to distinct types of contractual clauses:

> A typical "pay-when-paid" clause might read: "Contractor shall pay subcontractor within seven days of contractor's receipt of payment from the owner." Under such a provision in a construction subcontract, a contractor's obligation to pay the subcontractor is triggered upon receipt of payment from the owner. Most courts hold that this type of clause at least means that the contractor's obligation to make payment is suspended for a reasonable amount of time for the contractor to receive payment from the owner. The theory is that a "pay-when-paid" clause creates a timing mechanism only. Such a clause does not create a condition precedent to the obligation to ever make payment, and it does not expressly shift the risk of the owner's nonpayment to the subcontractor. . . .

> A typical "pay-if-paid" clause might read: "Contractor's receipt of payment from the owner is a condition precedent to contractor's obligation to make payment to the subcontractor; the subcontractor expressly assumes the risk of the owner's nonpayment and the subcontract price includes this risk." Under a "pay-if-paid" provision in a construction contract, receipt of payment by the contractor from the owner is an express condition precedent to the contractor's obligation to pay the subcontractor. A "pay-if-paid" provision in a construction subcontract is meant to shift the risk of

the owner's nonpayment under the subcontract from the contractor to the subcontractor. In many jurisdictions, courts will enforce a "pay-if-paid" provision only if that language is clear and unequivocal. Judges generally will find that a "pay-if-paid" provision does not create a condition precedent, but rather a reasonable timing provision, where the "pay-if-paid" provision is ambiguous.

Id. at 5-6 (footnotes omitted).

In this case, the Subcontract Agreement provides:

Upon final acceptance of the Work by Contractor and Owner, Contractor will pay Subcontractor for the Work at the prices and schedule and in the manner described on the Work Order(s); provided that, all payments to Subcontractor by Contractor are expressly contingent upon and subject to receipt of payment for the Work by Contractor from Owner, even if (a) Contractor has posted a payment bond with Owner or (b) the Primary Contract is on a "cost plus" or other reimbursement basis requiring the Contractor to pay subcontractors prior to being reimbursed by Owner.

**B.      Interpretation Under Texas Law**

The Texas Supreme Court has not definitively determined where the line between "pay-if-paid" and "pay-when-paid" clauses should be drawn. When the highest court of a state whose law is being applied in a diversity case has not decided the issue presented, we must determine what decision the court would make if faced with the same facts and circumstances. See Progressive Cas. Ins. Co. v. Engemann, 268 F.3d 985, 987 (10th Cir. 2001). In making that determination, we may "consider a number of authorities, including analogous decisions by the state Supreme Court, the decisions of the lower courts in the

- 10 -

state, the decisions of the federal courts and of other state courts, and the general weight and trend of authority." Id. at 988 (quotations and alteration omitted). "[W]here jurisdiction rests solely on diversity of citizenship and there is no controlling decision by the highest court of a state, a decision by an intermediate court should be followed by the Federal court, absent convincing evidence that the highest court of the state would decide otherwise." Webco Indus., Inc. v. Thermatool Corp., 278 F.3d 1120, 1132 (10th Cir. 2002) (quotations and alteration omitted).

In Gulf Construction Co. v. Self, 676 S.W. 2d 624 (Tex. Ct. App. 1984), the Texas Court of Appeals stated:

> A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement. Conditions may, therefore, relate either to the formation of contracts or liability under them. Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of the contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty. While no particular words are necessary for the existence of a condition, such terms as "if," "provide that," "on condition that," or some other phrase that conditions performance, usually connote an intent for a condition rather than a promise. In the absence of such a limiting clause, whether a certain contractual provision is a condition, rather than a promise, must be gathered from the contract as a whole and from the intent of the parties. . . . [W]here the intent of the parties is doubtful or where a condition would impose an absurd or impossible result, then the agreement should be interpreted as creating a covenant rather than a condition. Also, it is a rule of construction that a forfeiture, by finding a condition precedent, is to be avoided when possible under another reasonable reading of the contract. . . . The rule . . . is that:

> Since forfeitures are not favored, courts are inclined to construe the provisions in a contract as covenants rather than as conditions. If the terms of the contract are fairly susceptible of an interpretation which will prevent a forfeiture, they will be so construed.
>
> Generally, a writing is construed most strictly against its author and in such a manner as to reach a reasonable result consistent with the apparent intention of the parties.

Id. at 627-28 (citations omitted); see also Criswell v. European Crossroads Shopping Ctr., Ltd., 792 S.W. 2d 945, 948 (Tex. 1990) (laying out the interpretive approach to be used in resolving a dispute between an owner and an engineer using nearly identical language).

In this case, as noted above, the Subcontract Agreement provides that "all payments to Subcontractor by Contractor are expressly contingent upon and subject to receipt of payment for the Work by Contractor from Owner, even if . . . the Primary Contract is on a 'cost plus' or other reimbursement basis requiring the Contractor to pay subcontractors prior to being reimbursed by Owner." The Subcontract Agreement contains the necessary conditional language to make PathNet's payment of Defendants a condition precedent to Defendants' obligation to pay Plaintiff. Instead of using timing-related terms like "until," which are indicative of a "pay-when-paid" clause, cf. Self, 676 S.W. 2d at 627, the Subcontract Agreement uses phrases associated with conditionality. Indeed, the phrases "expressly contingent upon" and "subject to" in the Subcontract

Agreement are similar to the words "if," "provide that," and "on condition that" cited in Self as being indicative of the creation of a condition precedent. See Black's Law Dictionary (8th ed. 2004) (defining "contingent" as "[d]ependent on something else; conditional"); see also A.J. Wolfe Co. v. Baltimore Contractors, 244 N.E. 2d 717, 720-21 (Mass. 1969) ("In the absence of a clear provision that payment to the subcontractor is to be directly *contingent upon* the receipt by the general contractor of payment from the owner, such a provision should be viewed only as postponing payment by the general contractor for a reasonable time after requisition . . . .") (emphasis added). While the Subcontract Agreement might have been more explicit, cf. Carney & Cizek, supra (noting that a typical "pay-if-paid" clause might state that "the subcontractor expressly assumes the risk of the owner's nonpayment and the subcontract price includes this risk"), the Subcontract Agreement's failure to say all that it might have said is not enough to throw the intent of the contracting parties into doubt. Cf. Self, 676 S.W. 2d at 628.

Though it did so only in passing, the Texas Supreme Court recently cited Self approvingly, suggesting that the Texas Supreme Court would use the Self approach in construing the Subcontract Agreement. See Interstate Contracting Corp. v. City of Dallas, 135 S.W. 3d 605, 618 (2004) (stating that Self holds that

- 13 -

"*unless there is an express contractual provision to the contrary*, a contractor is ultimately responsible for payment of its subcontractors") (emphasis added).

Case law from other jurisdictions does not provide "convincing evidence," Thermatool Corp., 278 F.3d at 1132, that the Texas Supreme Court would not employ the Self approach. In Thomas J. Dyer Co. v. Bishop International Engineering Co., 303 F.2d 655, 661 (6th Cir. 1962)—the seminal case on the enforceability of "pay-if-paid" or "pay-when-paid" clauses—the Sixth Circuit stated:

> Normally and legally, the insolvency of the owner will not defeat the claim of the subcontractor against the general contractor. Accordingly, in order to transfer this normal credit risk incurred by the general contractor from the general contractor to the subcontractor, the contract between the general contractor and subcontractor should contain an express condition clearly showing that to be the intention of the parties.

Id. at 660-61; see also Lafayette Steel Erectors, Inc. v. Roy Anderson Corp., 71 F. Supp. 2d 582, 587 (S.D. Miss. 1997) ("Dyer has been cited and relied upon repeatedly . . . ."); Mrozik Constr., Inc. v. Lovering Assocs., Inc., 461 N.W. 2d 49, 51 (Minn. Ct. App. 1990) (describing Dyer as "a leading case on which the Restatement [(Second) of Contracts] illustration was based"); Watson Constr. Co. v. Reppel Steel & Supply Co., 598 P.2d 116, 119 (Ariz. Ct. App. 1979) (terming Dyer "a leading decision in this area"); David R. Hendrick, John I. Spangler, III, & Robert B. Wedge, Battling for the Bucks: The Great Contingency Payment

Clause Debate, 16 Construction Law. 12, 17 (1996) ("The Dyer/Restatement approach has been adopted in the majority of jurisdictions . . . ."). The fact that the approach used in Dyer and its progeny is similar to the Self approach lends credence to the conclusion that the Texas Supreme Court would employ the Self approach.

Case law from jurisdictions that employ an approach that approximates the Self approach suggests that the Texas Supreme Court would use the Self approach to find that the "expressly contingent" clause in the Subcontract Agreement constitutes a "pay-if-paid" clause, rather than a "pay-when-paid" clause. Compare Robert F. Wilson, Inc. v. Post-Tensioned Structures, Inc., 522 So. 2d 79, 80 (Fla. Dist. Ct. App. 1988) (finding a condition precedent in contract stating that "final payment is contingent upon payment to the Contractor" and that "[i]n the event a controversy occurs between the Owner and the General Contractor concerning the Contract with the Owner . . . no compensation for these items shall be due the Subcontractor from the Contractor until payment for them is received by the Contractor") (quotations and emphasis omitted), with Moore, 366 F. Supp. at 955-56 (noting that no condition precedent was created by a contract stating that "Sub-Contractor will be paid in payments as and when Contractor receives payments from the Owner . . . and where payments are made by the Owner upon estimates or for percentages of work completed, Sub-Contractor shall then receive

his proportionate part thereof. . . . The retained or remaining percent shall be paid after final estimate is made and after the architect and the Owner has certified their satisfaction as to the completion of this sub-contract, and after the Contractor has been paid by the Owner.") (quotations omitted), <u>Peacock Constr. Co. v. Modern Eng'g, Inc.</u>, 353 So. 2d 840, 841-43 (Fla. 1977) (noting that no condition precedent was created by a contract stating that the general contractor "would make final payment to the subcontractors, 'within 30 days after the completion of the work included in this sub-contract, written acceptance by the Architect and full payment therefor by the Owner'"), <u>and</u> <u>Watson</u>, 598 P.2d at 120 (finding that no condition precedent was created by a contract stating that "'THE CONTRACTOR AGREES . . . to pay the Sub-Contractor, promptly upon receipt thereof from the Owner, the amount received by the Contractor on account of the Sub-Contractor's work to the extent of the Sub-Contractor's interest therein. . . . At all times subcontractor shall be paid to the extent that the contractor has been paid on his account.'").

Thus, the clear conditional language in the Subcontract Agreement marks it as a "pay-if-paid" clause enforceable under Texas law. As such, we hold that under Texas law Defendants are not obligated to pay Plaintiff for the work that Plaintiff performed under the Subcontract Agreement unless and until PathNet pays Defendants for that work.

- 16 -

## C.     Interpretation Under New Mexico Law

No New Mexico court has yet determined the enforceability of a "pay-if-paid" or "pay-when-paid" provision.  Both parties contend that a recent New Mexico statute—the Retainage Act, N.M. Stat. Ann. §§ 57-28-1–57-28-11—sheds light on the way that the New Mexico Supreme Court would interpret the Subcontract Agreement.  The Retainage Act states, in pertinent part, that:

> all construction contracts shall provide that payment for amounts due, except for retainage, shall be paid within twenty-one days after the owner receives an undisputed request for payment. . . . All construction contracts shall provide that contractors and subcontractors make prompt payment to their subcontractors and suppliers for amounts owed for work performed on the construction project within seven days after receipt of payment from the owner, contractor or subcontractor. . . . These payment provisions apply to all tiers of contractors, subcontractors, and suppliers.

N.M. Stat. Ann. § 57-28-5(A), (C).

Plaintiff argues that because the Retainage Act mandates prompt payment to subcontractors, New Mexico would be likely to find that a "pay-if-paid" clause in a contract for a private-sector construction project—a clause that might interfere with payments to subcontractors—is against public policy.  Defendants argue that the text of the act, by including the phrase "after receipt of payment from the owner," endorses contingent payments.

However, the fact that the New Mexico legislature has enacted this provision sheds little light on whether a New Mexico court would enforce a

bargained-for "pay-if-paid" clause in a contract for a private-sector construction project. See Statesville Roofing & Heating Co. v. Duncan, 702 F. Supp. 118, 122 (W.D.N.C. 1988) (noting that a prior version of North Carolina's equivalent of the Retainage Act "addresses only the issue of what is to be done when the general [contractor] has already been paid. It says nothing about what happens when the owner does not pay.").[4]

Thus, we must look outside New Mexico for guidance on how the New Mexico Supreme Court would interpret the Subcontract Agreement. As noted above, the general weight and trend of authority holds that enforceable "pay-if-paid" clauses may be created in contracts for private-sector construction projects by using language clearly indicating the intent to create a condition precedent. See also Richard A. Lord, 8 Williston on Contracts § 19:58 (2004) ("[I]t has long been the rule that, if the parties clearly do intend that the risk of nonpayment be borne by the subcontractor, and clearly express that intent by making the right of the subcontractor to be paid expressly conditional on the receipt of such payment by the contractor from the owner, they may by contract allocate that risk, and the courts will enforce that freely bargained-for allocation of risk."). Only a handful

_____

[4]Neither party contends that the Texas equivalent of the Retainage Act, Tex. Prop. Code Ann. §§ 28.001–28.010, sheds light on the way that the Texas Supreme Court would interpret the Subcontract Agreement. If the parties were to make such an argument, the argument would fail for the reasons discussed in connection with this analysis of the New Mexico Retainage Act.

of states have determined that clearly drafted "pay-if-paid" clauses in contracts for private-sector construction projects are not enforceable on public policy grounds. Since it appears that the New Mexico Supreme Court would not find a clearly drafted "pay-if-paid" clause in a contract for a private-sector construction project unenforceable for the reasons expressed by these other states, it follows that the New Mexico Supreme Court likely would find the "pay-if-paid" clause in the Subcontract Agreement to be enforceable under New Mexico law. See Hendrick, Spangler & Wedge, supra, at 23 ("[E]xcept for those states where conditional payment provisions are unenforceable as a matter of public policy, a conditional payment provision will be enforced if the clause utilizes the term 'condition' or 'condition precedent,' and if it is clear and unambiguous that the subcontractor assumed the risk of owner nonpayment."); see also id. at 27 ("Except for the jurisdictions which have, by statute, barred conditional payment provisions, all courts enforce 'pay-if-paid' clauses, particularly where they are unambiguous, and clearly provide that payment from the owner is a condition precedent to payment to the subcontractor.").

The highest courts in two states have voided "pay-if-paid" provisions in contracts for private-sector construction projects as against public policy because such clauses violate the antiwaiver protections in the states' mechanic's lien statutes. See William R. Clarke Corp. v. Safeco Ins. Co., 938 P.2d 372, 374 (Cal.

1997) ("[P]ay if paid provisions . . . are contrary to the public policy of this state and therefore unenforceable because they effect an impermissible indirect waiver or forfeiture of the subcontractors' constitutionally protected mechanic's lien rights in the event of nonpayment by the owner."); West-Fair Elec. Contractors v. Aetna Cas. & Sur. Co., 661 N.E.2d 967, 971 (N.Y. 1995) ("[A] pay-when-paid provision which forces the subcontractor to assume the risk that the owner will fail to pay the general contractor is void and unenforceable as contrary to public policy set forth in the Lien Law § 34 [which states that 'any contract, agreement or understanding whereby the right to file or enforce any [mechanic's] lien . . . is waived, shall be void as against public policy and wholly unenforceable'].") However, because New Mexico does not have an express antiwaiver provision in its mechanic's lien laws, cf. N.M. Stat. Ann. § 48-2A-12(B) (referring to a "signed waiver of lien"), the reasoning in Clarke and West-Fair does not apply. See 3 Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner and O'Connor on Construction Law, § 8:49 (2005); cf. Dayside, Inc. v. First Judicial District Court, 75 P.3d 384, 386-87 (Nev. 2003) ("Some state legislatures have declared a lien waiver to be against public policy. But other state legislatures have expressly permitted waivers. . . . Absent a prohibitive legislative proclamation, a waiver of mechanic's lien rights is not contrary to public policy.") (footnotes omitted).

Some state legislatures have prohibited conditional payment provisions in contracts for private-sector construction projects. See N.C. Gen. Stat. § 22C-2 ("Payment by the owner to a contractor is not a condition precedent for payment to a subcontractor and payment by a contractor to a subcontractor is not a condition precedent for payment to any other subcontractor, and an agreement to the contrary is unenforceable."); Wis. Stat. § 779.135(3) (rendering void "[p]rovisions making a payment to a general contractor from any person who does not have a contractual agreement with the subcontractor or supplier a condition precedent to a general contractor's payment to a subcontractor or a supplier"). However, the New Mexico legislature has enacted no statutory measure analogous to those adopted by these other states. In the absence of guidance from the New Mexico legislature, we decline to craft a state policy prohibiting the use of clearly worded "pay-if-paid" clauses.

Thus, it appears that the New Mexico Supreme Court would interpret the Subcontract Agreement as containing an enforceable "pay-if-paid" clause and would enforce the clear condition in this contract as drafted by the parties. As such, we hold that under New Mexico law Defendants are not obligated to pay Plaintiff for the work that Plaintiff performed under the Subcontract Agreement unless and until PathNet pays Defendants for that work.

III.   Defendants' Partial Payment to Plaintiff

Plaintiff argues that a partial payment that Defendants made to Plaintiff establishes that the parties intended that Plaintiff should be paid regardless of whether Defendants were paid by PathNet. Plaintiff's argument fails under both Texas and New Mexico law.

Under Texas law,

> [i]f a written contract is worded so that it can be given a definite or certain legal meaning, then it is unambiguous. An ambiguity does not arise simply because the parties offer conflicting interpretations. Rather, a contract is ambiguous only if two or more meanings are genuinely possible after application of the pertinent rules of interpretation to the face of the instrument. Parol evidence is not admissible for the purpose of creating an ambiguity. Only when a contract is first determined to be ambiguous may the court admit extraneous evidence to determine the true meaning of the instrument.

Coastal Mart, Inc. v. Southwestern Bell Telephone Co., 154 S.W.3d 839, 843 (Tex. App. 2005). In this case, the Subcontract Agreement's consideration of whether payment from PathNet is a condition precedent to Defendants' obligation to pay Plaintiff "can be given a definite or certain legal meaning." Thus, under Texas law external evidence like the partial payment may not be considered in interpreting the alleged "pay-if-paid" clause in the agreement.

Under New Mexico law:

> [a]n ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity. The question whether an agreement contains an ambiguity is a matter of law to be decided by the trial court. The court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear. If the

> evidence presented is so plain that no reasonable person could hold
> any way but one, then the court may interpret the meaning as a matter
> of law.

Mark V, Inc. v. Mellekas, 845 P.2d 1232, 1235 (N.M. 1993) (citations omitted).

Because the partial payment made here was not part of the circumstances surrounding the execution of the contract, this post-formation conduct would not be considered by New Mexico for the purposes of creating an ambiguity under the contract. In any event, that payment does not shed light on Defendants' intent in contracting. The fact that Defendants made a single partial payment to Plaintiff before receiving payment from PathNet may be attributable to a host of factors, including a desire to maintain a cooperative working relationship with Plaintiff, provide an incentive for Plaintiff's continued performance, or allow Plaintiff operating capital to purchase supplies. Defendants' single partial payment does not signal a desire on the part of Defendants to be liable for all payments to Plaintiff even if PathNet did not pay Defendants. The payment neither creates an ambiguity in the agreement nor provides evidence of the parties' intent sufficient to overcome the indication of Defendants' intent expressed in the plain text of the Subcontract Agreement.

Therefore, the partial payment that Defendants made to Plaintiff does not establish that the parties intended that Plaintiff should be paid regardless of whether Defendants were paid by PathNet. As such, the payment does not disturb

our conclusion that under both Texas and New Mexico law Defendants are not

obligated to pay Plaintiff for the work that Plaintiff performed under the

Subcontract Agreement unless and until PathNet pays Defendants for that work.[5]

_____

[5]Plaintiff does not raise the argument that the partial payment modified or waived the alleged "pay-if-paid" clause, stating in its brief that:

> [Defendants] . . . and the district court . . . discuss this [partial payment] issue in terms of waiver and rely on the provision in the Subcontract Agreement providing that the contract "may not be amended except by a writing . . . ." . . . However, [Plaintiff]'s argument in this regard is not based on waiver. Rather, [Plaintiff] asserts only that the payment is evidence of the parties' intent and their interpretation of their obligations pursuant to the Subcontract Agreement and the provision for payment contained in the work order.

Accordingly, we need not consider this issue. Even if we were to consider whether the payment modified the Subcontract Agreement, we would find, like the district court, that

> because the Subcontract Agreement provides that it "may not be amended except by a writing signed by each of the parties," and may not be modified or waived except in a writing signed by both parties, Defendants' single payment to Plaintiff could not effect a modification or waiver of the payment term making payment of Plaintiff "expressly contingent upon and subject to receipt of payment" by Defendants from PathNet.

To the extent that Plaintiff argues that a work order issued by Defendants to Plaintiff modifies or waives the "pay-if-paid" clause in the Subcontract Agreement, that argument is without merit. The fact that the work order does not reiterate the "pay-if-paid" clause, and instead states only that Plaintiff must present a release of lien before final payment will be made, does not undercut the condition precedent created by the "pay-if-paid" clause. In general such an order does not alter the main terms of the contract, but rather serves as an execution

(continued...)

- 24 -

## IV.    The "Termination Clause" in the Subcontract Agreement

Our conclusion that the parties intended PathNet's payment of Defendants to be a condition precedent to Defendants' obligation to pay Plaintiff is buttressed by an additional clause in the Subcontract Agreement that provides:

> If the Primary Contract to which a Work Order refers is terminated, suspended or delayed for any reason . . . . Subcontractor will only be entitled to recover from Owner such amounts as are payable to Contractor for the portion of the Work completed by Subcontractor, less Contractor's anticipated gross profit from the work. Subcontractor is not entitled to mobilization, start-up, demobilization or other amounts, or consequential, special, incidental, liquidated or punitive damages, or for commercial loss or lost profits, unless such amounts or damages are awarded to Contractor, in which case Subcontractor may recover such amounts or damages for the portion of the Work completed by Subcontractor less the same percentage constituting Contractor's gross profit retained by Contractor from all other amounts payable by Owner. <u>Subcontractor will not be entitled to any other remedy for a termination, suspension or delay under this Section . . . including any amounts directly from Contractor</u>. (Emphasis added.)

We need not and do not consider whether this provision—which the court below characterized as a "termination clause"—is sufficient on its own to constitute an enforceable "pay-if-paid" clause.  Rather, the termination clause

---

[5](...continued)
document under the contract.  For a work order to alter a condition precedent to payment under a contract, the order must contain a more direct expression of an intent to modify those terms than does the work order in this case.  Any tension between the work order's requirement that Plaintiff present a release of lien before receiving final payment, and the original contract's statement that Plaintiff waived all lien rights on signing the contract, is irrelevant for purposes of interpreting the"pay-if-paid" clause.

- 25 -

sheds light on the parties' intent in agreeing to the "expressly contingent" language in the "pay-if-paid" provision discussed above. The termination clause makes clear that following the termination, suspension, or delay of the contract between PathNet and Defendants, Plaintiff's remedy under nearly all circumstances is to seek reimbursement from PathNet—not Defendants.[6] There is no definition in the Subcontract Agreement for the phrase "terminated, suspended or delayed," nor are the words used in the phrase defined individually. However, the fact that the phrase is part of the larger expression "terminated, suspended or delayed *for any reason*" makes clear that the phrase is to be given a broad reading. Thus, the termination clause was triggered by PathNet's breach of its contract with Renegade based on PathNet's bankruptcy, even though PathNet did not formally negotiate an end to the contract. Therefore, the termination clause supports our conclusion that since PathNet terminated its contract with Defendants without paying Defendants for Plaintiff's work, Plaintiff cannot now seek to recover from Defendants the amount that Plaintiff asserts it is owed.

**CONCLUSION**

_____

[6] Based on the termination clause, it is at least arguable that Plaintiff should be able to seek a recovery directly from Defendants if Defendants are awarded mobilization, start-up, demobilization or other amounts, or consequential, special, incidental, liquidated or punitive damages, or commercial loss or lost profits. However, we need not conclusively determine whether this is the case because there is no indication in the record that Defendants were awarded such sums.

For the foregoing reasons, we AFFIRM the judgment of the district court.