EVANS, MECHWART, HAMBLETON & TILTON, INC., Appellant,

v.

TRIAD ARCHITECTS, LTD., Appellee.

[Cite as *Evans, Mechwart, Hambleton & Tilton, Inc. v. Triad Architects, Ltd.*, 196 Ohio App.3d 784, 2011-Ohio-4979.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–1154

Decided Sept. 29, 2011.

786

Burman & Robinson and Randal D. Robinson, for appellant.

Law Offices of Russell A. Kelm, Russell A. Kelm, and Joanne W. Detrick, for appellee.

_____

KLATT, Judge.

{¶ 1} Plaintiff-appellant, Evans, Mechwart, Hambleton & Tilton, Inc. ("EMH & T"), appeals from a judgment of the Franklin County Court of Common Pleas in favor of defendant-appellee, Triad Architects, Ltd. ("Triad"). For the following reasons, we reverse the judgment and remand the cause.

{¶ 2} In January 2007, Triad entered into an agreement with Centurion Development Group, L.L.C. ("Centurion") to provide architectural and engineering plans for a residential development that Centurion wanted to build. Triad asked EMH & T to supply civil-engineering services on the project. On January 22, 2007, Triad and EMH & T executed a contract whereby Triad agreed to pay EMH & T $128,550 for environmental- and engineering-due-diligence work, surveys, and development plans, as well as additional specified services.

{¶ 3} Centurion also hired Triad to work on another development project. In a second contract with Centurion, Triad agreed to provide architectural and engineering plans for a nine-story condominium building. Again, Triad turned to EMH & T for the civil-engineering work on the project. On July 9, 2007, Triad and EMH & T entered into a contract whereby Triad agreed to pay EMH & T $60,200 for a construction plan, landscape plan, topographical survey, geotechnical investigation, and other services.

{¶ 4} For the most part, Triad and EMH & T relied on the American Institute of Architects ("AIA") Standard Form of Agreement Between Architect and Consultant (Document C141–1997) to supply the terms of their January 22 and July 9, 2007 contracts. Thus, both contracts provided:

§ 12.5 Payments to the Consultant shall be made promptly after the Architect is paid by the Owner under the Prime Agreement. The Architect shall exert reasonable and diligent efforts to collect prompt payment from the Owner. The Architect shall pay the Consultant in proportion to amounts

received from the Owner which are attributable to the Consultant's services rendered.

In both contracts, the parties added the following term to the AIA form agreement:

§ 13.4.3 * * * The Consultant shall be paid for their services under this Agreement within ten (10) working days after receipt by the Architect from the Owner of payment for the services performed by the Consultant on behalf of their Part of the Project.

{¶ 5} EMH & T substantially completed all services required under the two contracts by December 11, 2007. EMH & T then billed Triad a total of $150,482.29. Triad, however, refused to pay. In response to EMH & T's attempts to recover payment, Triad contended that sections 12.5 and 13.4.3 of the parties' contracts required it to pay EMH & T only when and to the extent that Centurion paid it. Centurion canceled both projects and refused to pay Triad. Because Triad never collected payment from Centurion, Triad disclaimed any obligation to pay EMH & T.

{¶ 6} EMH & T filed suit against Triad, asserting claims for an account stated, professional services rendered, breach of contract, and unjust enrichment. Both parties moved for summary judgment. On November 17, 2010, the trial court entered a decision and final judgment granting Triad's motion for summary judgment and denying EMH & T's motion for summary judgment. EMH & T now appeals from that judgment, and it assigns the following errors:

██ The trial court erred in overruling Plaintiff–Appellant's Motion for Summary Judgment when it failed to consider established Ohio case law and construction industry standards in deciding that the language contained in the parties' contracts with respect to payment by Appellee constituted a "pay-if-paid" rather than "pay-when-paid" obligation as a matter of law.

██ The trial court erred in sustaining Defendant–Appellee's Motion for Summary Judgment since the pleadings and affidavits filed by Defendant–Appellee are inadequate and inadmissible as parol evidence, but even if considered, create rather than eliminate genuine issues of material fact.

{¶ 7} Because EMH & T's two assignments of error are interrelated, we will address them together. Both assignments of error challenge the trial court's ruling on the parties' motions for summary judgment. Entry of summary judgment is appropriate when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *Hudson v. Petrosurance, Inc.*, 127

Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 29; *Sinnott v. Aqua–Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, 949 N.E.2d 595, ¶ 5; *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, 919 N.E.2d 227, ¶ 6.

{¶ 8} The parties' dispute centers on the meaning of the contractual language setting forth Triad's obligation to pay EMH & T. Triad argues that sections 12.5 and 13.4.3 create a condition precedent: it must receive payment from Centurion for its duty to pay EMH & T to arise. According to Triad's interpretation of the parties' contracts, it owes EMH & T nothing because Centurion did not pay it. EMH & T disagrees, and instead contends that sections 12.5 and 13.4.3 impose on Triad an absolute duty to pay EMH & T within a reasonable time. Under EMH & T's interpretation, Centurion's failure to pay Triad does not negate Triad's obligation to pay EMH & T.

■ {¶ 9} This dispute is an iteration of a long-standing disagreement between general contractors and subcontractors over the enforcement of "pay-when-paid" and "pay-if-paid" contractual provisions. " 'A typical "pay-when-paid" clause might read: "Contractor shall pay subcontractor within seven days of contractor's receipt of payment from the owner." ' " *MidAmerica Constr. Mgt., Inc. v. MasTec N. Am., Inc.* (C.A.10, 2006), 436 F.3d 1257, 1261, quoting Robert F. Carney and Adam Cizek, Payment Provisions in Construction Contacts and Construction Trust Fund Statutes: A Fifty State Survey (Fall 2004), 24 Construction Law. 5, 5. The majority of courts, including Ohio courts, hold that this type of provision means that the contractor's obligation to make payment is suspended for a reasonable period of time for the contractor to receive payment from the owner. Id.; *Power & Pollution Servs., Inc. v. Suburban Power Piping Corp.* (1991), 74 Ohio App.3d 89, 91, 598 N.E.2d 69; *Franklin Consultants, Inc. v. Osborne* (Oct. 1, 1979), 11th Dist. No. 7–050, 1979 WL 208177; *Thos. J. Dyer Co. v. Bishop Internatl. Eng. Co.* (C.A.6, 1962), 303 F.2d 655, 661 (holding that a pay-when-paid provision is "designed to postpone payment for a reasonable period of time after work [is] completed, during which the general contractor would be afforded the opportunity of procuring from the owner the funds necessary to pay the subcontractor"); *Ziegenfuss Drilling, Inc. v. Frontier–Kemper Constructors, Inc.* (Aug. 20, 2009), S.D.W.Va. No. 2:07–cv–00342, 2009 WL 2599308, at *3; *Fixture Specialists, Inc. v. Global Constr., L.L.C.* (Mar. 30, 2009), D.N.J. No. 07–5614(FLW), 2009 WL 904031, at *3; *Envirocorp Well Servs., Inc. v. Camp Dresser & McKee, Inc.* (Oct. 25, 2000), S.D.Ind. No. IP99–1575–C–T/G, 2000 WL 1617840, at *5; *Lafayette Steel Erectors, Inc. v. Roy Anderson Corp.* (S.D.Miss.

1997), 71 F.Supp.2d 582, 587; *Statesville Roofing & Heating Co., Inc. v. Duncan* (W.D.N.C.1988), 702 F.Supp. 118, 121; *Havens Steel Co. v. Randolph Eng. Co.* (W.D.Mo.1985), 613 F.Supp. 514, 539, affirmed (C.A.8, 1987), 813 F.2d 186; *Seal Tite Corp. v. Ehret, Inc.* (D.N.J.1984), 589 F.Supp. 701, 704; *Midland Eng. Co. v. John A. Hall Constr. Co.* (N.D.Ind.1975), 398 F.Supp. 981, 993 (holding that pay-when-paid provisions "are not intended to provide the contractor with an eternal excuse for nonpayment"); *Fed. Ins. Co. v. I. Kruger, Inc.* (Ala.2002), 829 So.2d 732, 740 (holding that "the majority of jurisdictions construe [a pay-when-paid] * * * provision as allowing payment under the contract to be delayed but not stopped altogether"); *Wm. R. Clarke Corp. v. Safeco Ins. Co.* (1997), 15 Cal.4th 882, 885, 64 Cal.Rptr.2d 578, 938 P.2d 372 (holding that "the majority view is that, if reasonably possible, clauses in construction subcontracts stating that the subcontractor will be paid when the general contractor is paid [will be construed as] merely fixing the usual time for payment to the subcontractor, with the implied understanding that the subcontractor in any event has an unconditional right to payment within a reasonable time"); *Koch v. Constr. Technology, Inc.* (Tenn.1996), 924 S.W.2d 68, 71; *West–Fair Elec. Contrs. v. Aetna Cas. & Sur. Co.* (1995), 87 N.Y.2d 148, 155, 638 N.Y.S.2d 394, 661 N.E.2d 967; *A.J. Wolfe Co. v. Baltimore Contrs., Inc.* (1969), 355 Mass. 361, 365–366, 244 N.E.2d 717; *Atlantic States Constr. Co. v. Drummond Co.* (1968), 251 Md. 77, 83, 246 A.2d 251; *MECO Sys., Inc. v. Dancing Bear Ent., Inc.* (Mo.App.2001), 42 S.W.3d 794, 806; *Avon Bros., Inc. v. Tom Martin Constr. Co.* (Aug. 30, 2000), N.J.Super.A.D. No. A–740–99TI, 2000 WL 34241102, at *7; 8 Lord, Williston on Contracts (4th Ed.2010) 633, Section 19:59 ("The majority of courts have long held that * * * [a pay-when-paid] clause will be construed as creating an absolute obligation on the part of the contractor to pay, subject only to a time limitation, so that even if the owner becomes insolvent or otherwise does not pay the contractor, the contractor or its surety will nevertheless be obligated to make payment to the subcontractor"). Thus, a pay-when-paid provision serves as a timing mechanism, and not a condition precedent, for payment. *Sloan & Co. v. Liberty Mut. Ins. Co.* (C.A.3, 2011), 653 F.3d 175, 179–180; *MidAmerica Constr. Mgt., Inc.*, 436 F.3d at 1261; *Fed. Ins. Co.* at 737, 741; 3 Brunner and O'Connor, Construction Law (2002) 107, Section 8:47.

 {¶ 10} Under the custom in the construction industry, the risk of an owner's nonpayment rests on the general contractor. *Power & Pollution Servs., Inc.*, 74 Ohio App.3d at 91, 598 N.E.2d 69, quoting *Thos. J. Dyer Co.*, 303 F.2d at 661; *Sloan & Co.*, 653 F.3d at 183–184. Significantly, a pay-when-paid provision does not shift that risk to the subcontractor. *Chapman Excavating Co. v. Fortney & Weygandt, Inc.*, 8th Dist. No. 84005, 2004-Ohio-3867, 2004 WL 1631118, ¶ 22; *MidAmerica Const. Mgt., Inc.* at 1261. Therefore, once a reasonable period of time passes, the contractor must pay the subcontractor

regardless of whether the owner has paid the contractor. Welin, Appelbaum, and Currie, Ohio Construction Law Manual (2009), Section 10:10.

{¶ 11} Unlike a pay-when-paid provision, a pay-if-paid provision transfers the risk of an owner's nonpayment from the contractor down through the contracting tiers. *Chapman Excavating Co.* at ¶ 22. See also *Sloan & Co.*, 653 F.3d at 183–184; *MidAmerica Const. Mgt., Inc.*, 436 F.3d at 1262; 3 Brunner and O'Connor, Construction Law (2002) 107–108, Section 8:47. " 'A typical "pay-if-paid" clause might read: "Contractor's receipt of payment from the owner is a condition precedent to contractor's obligation to make payment to the subcontractor; the subcontractor expressly assumes the risk of the owner's nonpayment and the subcontract price includes this risk." ' " *MidAmerica Const. Mgt., Inc.* at 1261–1262. If a construction contract contains such a provision, then the contractor has to pay the subcontractor only if the owner first pays the contractor. Id. at 1262; *Sloan & Co.*, 653 F.3d at 179–180; *Wm. R. Clarke Corp.* at 885, 64 Cal.Rptr.2d 578, 938 P.2d 372.

{¶ 12} A pay-if-paid provision must clearly and unambiguously condition payment to the subcontractor on the receipt of payment from the owner. *Kalkreuth Roofing & Sheet Metal, Inc. v. Bogner Constr. Co.* (Aug. 27, 1998), 5th Dist. No. 97 CA 59, 1998 WL 666765. See also 8 Lord, Williston on Contracts (4th Ed. 2010) 636, 19:59 ("[I]f the parties clearly do intend that the risk of nonpayment be borne by the subcontractor and clearly express that intent by making the right of the subcontractor to be paid expressly conditional on the receipt of such payment by the contractor from the owner, they may by contract allocate that risk, and the courts will enforce that freely bargained-for allocation of risk"). Payment provisions qualify as pay-if-paid provisions if they expressly state that (1) payment to the contractor is a condition precedent to payment to the subcontractor (as in the above example), (2) the subcontractor is to bear the risk of the owner's nonpayment (as in the above example), or (3) the subcontractor is to be paid exclusively out of a fund the sole source of which is the owner's payment to the subcontractor. *Sloan & Co.*, 653 F.3d at 187, fn. 9. See also *LBL Skysystems (USA), Inc. v. APG–America, Inc.* (Aug. 31, 2005), E.D.Pa. No. 02–5379, 2005 WL 2140240, at *32 ("A pay-if-paid condition generally requires words such as 'condition,' 'if and only if,' or 'unless and until' that convey the parties' intention that a payment to a subcontractor is contingent on the contractor's receipt of those funds"); *Main Elec., Ltd. v. Printz Servs. Corp.* (Colo.1999), 980 P.2d 522, 528, fn. 6 ("Typically a payment clause that creates a condition precedent uses the phrase 'as a condition precedent' or other words indicating that the owner's failure to pay was reasonably foreseen and that the purpose of the payment provision was to address this possibility").

{¶ 13} If a payment provision fails to unequivocally evince an intent to create a condition precedent or shift the risk of the owner's nonpayment, then the majority of courts, including Ohio courts, will interpret the provision as a pay-when-paid, and not a pay-if-paid, provision. *Power & Pollution Servs., Inc.*, 74 Ohio App.3d at 91, 598 N.E.2d 69. See also *MidAmerica Constr. Mgt., Inc.*, 436 F.3d at 1262; *Ziegenfuss Drilling, Inc.*, 2009 WL 2599308, at *5; *Envirocorp Well Servs., Inc.*, 2000 WL 1617840, at *5; *R.N. Robinson & Son, Inc. v. Ground Improvement Techniques* (D.Colo.1998), 31 F.Supp.2d 881, 887; *Statesville Roofing & Heating Co.* at 121; *Main Elec., Ltd.* at 527–528; *Koch* at 71; *DEC Elec., Inc. v. Raphael Constr. Corp.* (Fla.1990), 558 So.2d 427, 429; *A.J. Wolfe Co.* at 365–366, 244 N.E.2d 717; *FaulknerUSA, LP v. Alaron Supply Co., Inc.* (Tex. App.2010), 322 S.W.3d 357, 359–360; *Richard F. Kline, Inc. v. Shook Excavating & Hauling, Inc.* (2005), 165 Md.App. 262, 273–274, 885 A.2d 381; *Framingham Heavy Equip. Co. v. John T. Callahan & Sons, Inc.* (2004), 61 Mass.App.Ct. 171, 175–176, 807 N.E.2d 851; *G.E.L. Recycling, Inc. v. Atlantic Environmental, Inc.* (Fla.App.2002), 821 So.2d 431, 434; *MECO Sys., Inc.* at 806; *Avon Bros., Inc.*, 2000 WL 34241102, at *7; *Mrozik Constr., Inc. v. Lovering Assoc., Inc.* (Minn. App.1990), 461 N.W.2d 49, 52; Welin, Appelbaum, and Currie, Ohio Construction Law Manual (2009), Section 10:10; William M. Hill and Mary–Beth McCormack, Pay–If–Paid Clauses: Freedom of Contract or Protecting the Subcontractor From Itself? (Winter 2011), 31 Construction Law. 26, 26–27.

■■ {¶ 14} The majority approach to pay-when-paid and pay-if-paid provisions stems from the general disfavor in the law towards conditions precedent. A condition precedent is an event that must occur before an obligation in the contract will become effective. *Moody v. Ohio Rehab. Servs. Comm.*, 10th Dist. No. 02AP–596, 2002-Ohio-6965, 2002 WL 31819718, ¶ 9. The nonoccurrence of a condition precedent excuses a party from performing the duty promised under the contract. *Adkins v. Bratcher*, 4th Dist. No. 07CA55, 2009-Ohio-42, 2009 WL 44822, ¶ 31; *Hiatt v. Giles*, 2d Dist. No. 1662, 2005-Ohio-6536, 2005 WL 3346172, ¶ 23; *Moody* at ¶ 9; *Kern v. Clear Creek Oil Co.*, 149 Ohio App.3d 560, 2002-Ohio-5438, 778 N.E.2d 115, ¶ 21. Whether a contractual provision is a condition precedent or merely a promise to perform is a question of the parties' intent. *Adkins* at ¶ 32; *Hiatt* at ¶ 23; *Kaufman v. Byers*, 159 Ohio App.3d 238, 2004-Ohio-6346, 823 N.E.2d 530, ¶ 29; *Moody* at ¶ 9; *Kern* at ¶ 21. A court ascertains that intent from the language of the particular provision, the language of the entire agreement, and the subject matter of the agreement. Id.

■ {¶ 15} Because the law disfavors conditions precedent, " 'whenever possible courts will avoid construing provisions to be such unless the intent of the agreement is plainly to the contrary.' " *Hiatt* at ¶ 23, quoting *Rudd v. Online Resources, Inc.* (June 18, 1999), 2d Dist. No. 17500, 1999 WL 397351. See also

*Adkins* at ¶ 32; *Kaufman* at ¶ 30 ("When possible, courts should construe promises in a bilateral contract as mutually dependent and concurrent, rather than one promise as a condition precedent to the other."); 13 Lord, Williston on Contracts (4th Ed. 2000) 429, Section 38:13 ("Contract conditions are disfavored, and will not be found in the absence of unambiguous language indicating an intention to create a conditional obligation"). Consequently, absent an explicit intent to establish a condition precedent, courts will not interpret a contractual provision in that manner, particularly when a forfeiture will result. *Kaufman* at ¶ 28. See also Restatement of the Law 2d, Contracts (1979), Standards of Preference with Regard to Conditions, Section 227(1) ("In resolving doubts as to whether an event is made a condition of an obligor's duty, and as to the nature of such an event, an interpretation is preferred that will reduce the obligee's risk of forfeiture, unless * * * the circumstances indicate that he has assumed the risk"); *Concrete Designers, Inc. v. Demmler* (Dec. 28, 1995), 10th Dist. Nos. 95APE06–722, 95APE06–723, and 95APE06–821, 1995 WL 765170 ("[A]n interpretation that will reduce the obligee's risk of forfeiture is preferred over an interpretation that an event is a condition"); *Dover v. Morales* (Apr. 21, 1993), 9th Dist. No. 15817, 1993 WL 120366 ("[C]onditions precedent are not favored at law. This is particularly so when interpreting a contract provision as a condition precedent, rather than as a promise or covenant, would work a forfeiture").

{¶ 16} As the Restatement explains, a forfeiture, in this context, is the denial of compensation that results when the obligee loses its right to the agreed exchange after he has relied substantially, as by performance, on the expectation of that exchange. Restatement of the Law 2d, Contracts, Section 227, Comment *b* and Section 229, Comment *b*. To illustrate the rule disfavoring forfeiture, the Restatement offers the following example:

> [U]nder a provision that a duty is to be performed "when" an event occurs, it may be doubtful whether it is to be performed only if that event occurs, in which case the event is a condition, or at such time as it would ordinarily occur, in which case the event is referred to merely to measure the passage of time. In the latter case, if the event does not occur[,] some alternative means will be found to measure the passage of time, and the non-occurrence of the event will not prevent the obligor's duty from becoming one of performance. If the event is a condition, however, the obligee takes the risk that its non-occurrence will discharge the obligor's duty.

Restatement of the Law 2d, Contracts, Section 227, Comment *b*. See also *Franklin Consultants, Inc.* (" 'The time of performance is sometimes * * * made to depend upon the happening of some event which the parties to the contract do not covenant to cause to happen. The tendency of the courts is to hold that unless the contract shows clearly that such an action is an express condition, the

provision with reference to such act is inserted in order to fix the time of performance, but not to make * * * the happening of such event a condition precedent' ").

{¶ 17} This example mirrors the situation presented by a typical pay-when-paid provision. A pay-when-paid provision is susceptible to two interpretations; namely, (1) as setting a condition precedent to payment or (2) as fixing the point in time when payment would ordinarily occur. In the face of this ambiguity, courts avoid forfeiture by construing the pay-when-paid provision as a promise to pay and making payment due within a reasonable time. *R.N. Robinson & Son, Inc.* at 886; *Lafayette Steel Erectors, Inc.* at 587; *Brown & Kerr, Inc. v. St. Paul Fire & Marine Ins. Co.* (N.D.Ill.1996), 940 F.Supp. 1245, 1250; *Fed. Ins. Co.* at 739–740 ("[T]he preferred interpretation for the pay-when-paid clause * * * is one that minimizes the risk of forfeiture to [the subcontractor]"); *Main Elec., Ltd.* at 527; *Richard F. Kline, Inc.* at 274, 885 A.2d 381. The owner's nonpayment, therefore, does not excuse the contractor from performing as promised under its contract with the subcontractor. In contrast to a pay-when-paid provision, a pay-if-paid provision is, by definition, a clear and unambiguous condition precedent to payment. By signing a contract that contains a pay-if-paid provision, the subcontractor takes the risk that the owner's nonpayment will discharge the contractor's duty to pay the subcontractor.

{¶ 18} Here, the parties' contracts contain two contractual provisions that Triad claims qualify as pay-if-paid provisions: sections 12.5 and 13.4.3. We will deal with section 13.4.3 first. That section, which the parties themselves drafted and added to the AIA form agreement, states:

> The Consultant shall be paid for their services under this Agreement within ten (10) working days after receipt by the Architect from the Owner of payment for the services performed by the Consultant on behalf of their Part of the Project.

Contrary to Triad's argument, this provision is a prototypical pay-when-paid provision. See, e.g., *Chapman Excavating Co.* at ¶ 4, 34 (holding that contractual language requiring "[p]artial payments of the Subcontract Sum shall be made within ten (10) days after payment is received by [the general contractor] from Owner" constituted a pay-when-paid provision); *R.N. Robinson & Son, Inc.* at 885, 887 (holding that contractual language requiring "[p]ayment to [the subcontractor] will be made at a reasonable time after receipt of payment from the Owner; approximately 10 working days" was a pay-when-paid provision); *G.E.L. Recycling, Inc.* at 432, 434 (holding that contractual language stating "[p]ayments will be made for the value of the work installed each week within 7 business days after receipt of payment from the owner" was a pay-when-paid provision).

{¶ 19} Section 12.5, however, presents a slightly closer question. That section, which is part of the AIA form agreement, states:

> Payments to the Consultant shall be made promptly after the Architect is paid by the Owner under the Prime Agreement. The Architect shall exert reasonable and diligent efforts to collect prompt payment from the Owner. The Architect shall pay the Consultant in proportion to amounts received from the Owner which are attributable to the Consultant's services rendered.

Triad focuses on the last sentence of this section and argues that it establishes a condition precedent to its duty to pay EMH & T. According to Triad's interpretation of this sentence, only Triad's receipt of some payment from Centurion will trigger its obligation to pay EMH & T a proportion of the amount received.

{¶ 20} We find that the language of section 12.5 is not explicit enough to indicate that the parties intended to create a condition precedent. Section 12.5 does not expressly make payment from Centurion a condition precedent to payment of EMH & T, address which party will bear the risk of Centurion's nonpayment, or require Triad to pay EMH & T exclusively out of monies paid to Triad by Centurion. The last sentence of Section 12.5 directs Triad only on what to do upon payment from Centurion; it assumes that Triad will receive payment. The sentence, however, is silent as to the extent of Triad's obligation if Centurion fails to pay. We will not infer from this silence an intent to create a condition precedent, particularly when the condition precedent would result in a forfeiture of any compensation for EMH & T's work. See *Wisznia v. Wilcox* (Tex.App. 1969), 438 S.W.2d 874, 876 (holding that a contractual provision stating that "[t]he engineer shall be paid in the same proportionate manner as the architect is being paid by the [owner]" was a paid-when-paid provision because it "does not refer to the possible insolvency of [the owner], nor does it limit in any degree the liability of [the architect] for [the engineer's] fee. It deals with when and how payment will be made").

{¶ 21} Although not necessary to our analysis, AIA commentary complements our conclusion that section 12.5 is a pay-when-paid, and not a pay-if-paid, provision. According to the AIA's Guide for Amendments to AIA Owner–Architect Agreements (Document B503–2007), "AIA Standard Architect–Consultant agreements do not contain a pay-if-paid clause." The guide goes on to caution that "[a] pay-if-paid clause must clearly establish the intent of the parties to shift the credit risk of the Owner's insolvency and should include the words 'condition precedent.'" To modify the AIA form agreement between an architect and consultant to include a pay-if-paid provision, the guide recommends the following language:

> It is specifically understood and agreed that the payment to the Consultant is dependent, as a condition precedent, upon the Architect's receipt of payment

from the Owner. Consultant acknowledges the risk of non-payment to the Architect by the Owner which may result in non-payment to the Consultant by the Architect.

In the case at bar, the parties did not supplement their contracts with this language or any other similar language.

{¶ 22} In a final effort to convince this court that the parties intended to be bound by a pay-if-paid provision, Triad points to the parties' spring 2007 negotiations regarding additional work that EMH & T performed on the project that was the subject of the parties' January 22, 2007 contract. When EMH & T proposed the additional work, it attached to its proposal a form entitled "Terms and Conditions of Professional Service" and stated that the form "shall be considered as part of this proposal." Among numerous other terms, the form provided, "Client is liable for timely payment of invoiced amounts without regard to whether Client has received financing, payments, or income from any source, including funds related to the project for which services were provided by EMHT." In the letter authorizing the additional work, Triad replied that the January 22, 2007 contract governed the additional work and "supercede[d] any conflicting language in your attached proposal." From this exchange, Triad concludes that EMH & T understood that each of the parties' contracts contained a pay-if-paid provision.

{¶ 23} As we stated above, whether a contractual provision is a condition precedent is a matter determined by the parties' intent, which a court ascertains from the language of the particular provision, the language of the entire agreement, and the subject matter of the agreement. *Adkins*, 2009-Ohio-42, at ¶ 32; *Hiatt*, 2005-Ohio-6536, at ¶ 23; *Kaufman*, 159 Ohio App.3d 238, 2004-Ohio-6346, at ¶ 29; *Moody*, 2002-Ohio-6965, at ¶ 9; *Kern*, 149 Ohio App.3d 560, 2002-Ohio-5438, at ¶ 21. The list does not include evidence extrinsic to the agreement. Consequently, we find the parties' negotiations irrelevant to whether the contracts contained a pay-if-paid provision that made payment to EMH & T contingent upon payment from Centurion.

{¶ 24} Moreover, even if Triad's evidence was relevant, we find that it would be insufficient to convince reasonable minds that EMH & T construed sections 12.5 and 13.4.3 as pay-if-paid provisions. Triad characterizes the spring 2007 negotiations as an attempt by EMH & T to place a provision guaranteeing it payment in the parties' July 9, 2007 contract. Triad then reasons that EMH & T would not have made this attempt if it truly believed that sections 12.5 and 13.4.3 protected its financial interests. Reasonable minds would find this interpretation of the evidence unpersuasive for two reasons. First, the parties were negotiating adding to the scope of work contemplated in the January 22, 2007 contract, not the wording of the terms for the July 9, 2007 contract. Second, during the

negotiations, neither party mentioned section 12.5 or 13.4.3, nor did the parties discuss the payment term from the "Terms and Conditions of Professional Service" form. The term at issue was one of numerous terms contained in a two-column, single-spaced form, typed in eight-point font. Because EMH & T did not single that term out or mention it in any way during the negotiations, reasonable minds could not find that its inclusion indicated anything about EMH & T's understanding of section 12.5 or 13.4.3.

{¶ 25} As sections 12.5 and 13.4.3 are pay-when-paid provisions, Triad owed EMH & T a duty to pay it within a reasonable time after the completion of its work. Courts allow a delay of payment for a reasonable time to "afford[ ] [the contractor] the opportunity of procuring from the owner the funds necessary to pay the subcontractor." *Thos. J. Dyer Co.*, 303 F.2d at 661. Therefore, in order to be reasonable, the time period between the completion of the subcontractor's work and the date payment is due must extend long enough to give the contractor a sufficient opportunity to actively pursue collection of payment from the owner. *Avon Bros., Inc.*, 2000 WL 34241102, at *8. In most cases, by the time disputes involving pay-when-paid provisions reach the point of judicial resolution, years have passed since the subcontractor completed its work. Courts thus conclude that as a matter of law, a reasonable time has elapsed. See, e.g., *Chapman Excavating Co.* at ¶ 9, 34 (holding that a reasonable time had elapsed as a matter of law when the contractor had not paid the subcontractor for approximately four years); *Lafayette Steel Erectors, Inc.*, 71 F.Supp.2d at 592 (holding that the contractor had exhausted its reasonable time when over three years had passed since the subcontractor had received its last payment); *Avon Bros., Inc.*, 2000 WL 34241102 at *8 (holding that a reasonable time "ha[d] long since passed" when three years had elapsed without payment).

{¶ 26} Here, EMH & T substantially performed all services set forth in the contracts by December 11, 2007. Consequently, EMH & T has been waiting over three and one-half years for payment. Given this lengthy delay, we find that as a matter of law, Triad has had a sufficient opportunity to pursue payment from Centurion. Consequently, we conclude that Triad breached its contractual duty to pay EMH & T within a reasonable time. The trial court thus erred in granting Triad summary judgment and denying EMH & T summary judgment.

{¶ 27} Based upon the forgoing, we sustain EMH & T's first and second assignments of error. We reverse the judgment of the Franklin County Court of Common Pleas, and we remand this matter to that court so that it may enter judgment consist with law and this decision.

Judgment reversed
and cause remanded.

SADLER and FRENCH, JJ., concur.