[Cite as *Marine Max of Ohio, Inc. v. Moore*, 2016-Ohio-3202.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Marine Max of Ohio, Inc.                      Court of Appeals No. OT-15-033

    Appellee                              Trial Court No. 07CV511

v.

Hilary A. Moore                               **DECISION AND JUDGMENT**

    Appellant                             Decided:  May 27, 2016

* * * * *

James Papakirk and Gregory E. Hull, for appellee.

Jeffrey P. Nunnari, for appellant.

* * * * *

**JENSEN, P.J.**

{¶ 1} Defendant-appellant, Hilary A. Moore (now known as, and referred to here as, Hilary Nunnari), appeals the August 3, 2015 judgment of the Ottawa County Court of Common Pleas, which granted a motion to enforce a settlement agreement, filed by plaintiff-appellee, MarineMax of Ohio, Inc.  For the reasons that follow, we affirm the trial court judgment.

## I. Background

{¶ 2} In 1998, MarineMax began leasing property located at 2555 N.E. Catawba Road in Port Clinton, Ohio. The property was then owned by Treasure Cove Marina, Inc., an entity owned and operated by John R. Moore, IV, Nunnari's ex-husband. As part of Moore and Nunnari's property distribution in their divorce action, Nunnari acquired title to two acres of the property. At that point, she demanded that MarineMax remit a portion of its rental payments to her. MarineMax had received no court order instructing it to do so, so it continued to make payment to Treasure Cove.

{¶ 3} On August 31, 2007, Nunnari attempted self-help measures to prevent MarineMax from entering the property. She accessed the building, erected "no trespassing signs," changed the locks, turned off the power and air-conditioning, and padlocked several doors. MarineMax contacted the Catawba Island police department, and gained access to the building. On September 2, 2007, Nunnari again entered the property and placed rope around the property and "no trespassing" signs on the building. She threatened to have MarineMax employees arrested for being on the property.

{¶ 4} On September 7, 2007, MarineMax filed a declaratory judgment action and a motion for a temporary restraining order and permanent injunctive relief in the Ottawa County Court of Common Pleas. It asked the court to declare that Nunnari was not permitted to exercise self-help repossession, and to enjoin her from utilizing self-help measures. On September 21, 2007, it amended its complaint to add as defendants Moore

2.

Marine, Inc. (formerly known as Treasure Cove Marina, Inc.), and Bernard Niehaus, an attorney appointed by the court in the divorce action to act as receiver for the property.

{¶ 5} In the amended complaint, which included a notice of lis pendens, MarineMax asserted that the legal description of the property was mistakenly omitted from the lease agreement with Treasure Cove. It sought to reform the lease agreement to include the legal description, and to identify the proper parties to the lease—MarineMax, Moore Marine, and Hilary Moore. MarineMax also alleged that real estate taxes were due and owing and should be paid by Moore Marine, and it sought permission from the court to pay into court all rent due under the lease agreement beginning October 1, 2007. Nunnari answered and counterclaimed, seeking judgment for possession of the property and for damages for unlawful possession.

{¶ 6} On March 14, 2008, the trial court stayed proceedings until September 7, 2008, because Moore had initiated bankruptcy proceedings. Eventually recognizing that Moore was not a party to the action, it vacated that stay on May 21, 2008. On July 11, 2008, the trial court sua sponte issued a judgment entry consolidating the present action with the divorce action, *Moore v. Moore*, Ottawa County case No. 02DR064A, and *Moore v. Cove West Properties,* Ottawa County case No. 07CV321H. The court again stayed proceedings on April 13, 2010, as to Moore Marine, Inc. after learning that Moore Marine, Inc. had initiated bankruptcy proceedings. Approximately a year-and-one-half before that, however, MarineMax and Nunnari entered into a settlement agreement and general release. Under paragraph 2 of that agreement, MarineMax agreed to:

3.

a. pay to Mrs. Nunnari the sum of Fourteen thousand two hundred and no/100 dollars ($14,200.00);

b. inform any subleasee on the premises that it is obligated to pay rent directly to Mrs. Nunnari, and turn over to Mrs. Nunnari any rent paid directly to it by any subleasee tendered after execution of the Agreement;

c. remain on the Property paying rent in the amount of Five Thousand Five Hundred and no/100 dollars ($5,500) per month, payable on or before the first of each month, until such time as Mrs. Nunnari gives MarineMax notice of termination at least sixty days in advance or MarineMax gives Mrs. Nunnari notice of termination at least five days in advance; which terms shall be further described in the Lease to be executed concurrently herewith on the form attached hereto as Exhibit A.

d. pay the proportionate share of 2008 property taxes, when due, for the period from January 1, 2008 through September 30, 2008 on the Property to the Ottawa County Treasurer, and provide proof of having done so to Mrs. Nunnari; and

e. dismiss its claim against Mrs. Nunnari in the MarineMax suit, with prejudice.

4.

**{¶ 7}** Paragraph 3 of the agreement provided that:

> In exchange for the performance of the foregoing promises made by MarineMax, Mrs. Nunnari will enter into a consent order dismissing her counterclaims against MarineMax in the MarineMax suit, with prejudice.

**{¶ 8}** One month after executing the settlement agreement, MarineMax provided five-days' notice of its intent to terminate the lease. Nunnari believed that she had been duped by MarineMax, and her husband, an attorney who is representing her in this appeal, sent an email to MarineMax's counsel on October 25, 2008, advising that Nunnari was repudiating the settlement agreement and would pursue her counterclaims. Counsel for MarineMax responded that it had complied with the settlement agreement, that there was no basis for repudiation, and that it would vigorously pursue its enforcement.

**{¶ 9}** Almost six years passed. On May 14, 2014, Nunnari filed a request that the action be returned to the court's docket of active cases, and she asked for a status conference. She attached to her notice a final decree from the bankruptcy court dated April 24, 2014, which indicated that Moore Marine, Inc.'s bankruptcy proceedings had concluded.

**{¶ 10}** MarineMax contends that on July 7, 2014, upon inquiring of Nunnari as to the reason for her May 14, 2014 request, it learned for the first time that it had not paid its proportionate share of the 2008 taxes, as required under the terms of the settlement

5.

agreement.[1]  MarineMax asked for a copy of the tax bill, which Nunnari provided.  That bill, dated May 21, 2009, had been sent to Nunnari's home address almost seven months after MarineMax vacated the property.  On July 11, 2014, MarineMax remitted to Nunnari a check for its proportionate share of the tax bill.  Nunnari refused to negotiate the check.

{¶ 11} On August 29, 2014, MarineMax filed a motion to enforce the settlement agreement.  Nunnari opposed this motion based on MarineMax's failure to pay the 2008 taxes, and its failure to dismiss its claims against her.  She argued that the terms in paragraph 2 of the settlement agreement were conditions precedent, and MarineMax's failure to perform items (d) and (e) relieved her of her obligations under the agreement.

{¶ 12} In an order dated August 3, 2015, the trial court granted MarineMax's motion to enforce the settlement agreement.  It found that the settlement agreement was binding, and despite the failure to pay the taxes when they came due, there was no evidence to permit Nunnari to repudiate the agreement.  It is from this judgment that Nunnari appealed.  She assigns the following errors for our review.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED TO THE PREJUDICE OF
APPELLANT MOORE BY FINDING THE SETTLEMENT
AGREEMENT VALID AND ENFORCEABLE BECAUSE IT FAILED

---

[1] Email correspondence reveals, however, that it knew this in November of 2010.

6.

TO CONSIDER WHETHER MARINEMAX HAD SATISFIED

CONDITIONS PRECEDENT TO ITS ENFORCEMENT.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED TO THE PREJUDICE OF

APPELLANT MOORE BECAUSE, EVEN IF THE SETTLEMENT

AGREEMENT IS OTHERWISE VALID AND ENFORCEABLE UNDER

THE FACTS, THE TRIAL COURT NEVER CONSIDERED

APPELLANT'S DEFENSE OF FRAUD IN THE INDUCEMENT.

## II.  Law and Analysis

{¶ 13} MarineMax and Nunnari agree that MarineMax satisfied the conditions in paragraph 2, items (a), (b), and (c) of the settlement agreement.  Their debate is over the effect of MarineMax's failure to make timely payment of its share of the 2008 taxes (item (d)), and its failure to dismiss its claims against Nunnari (item (e)).  Nunnari characterizes those terms as conditions precedent, and she argues that MarineMax's failure to satisfy these conditions relieved her of her duty to perform under the agreement.  Alternatively, she claims that even if the settlement agreement is valid and enforceable, MarineMax fraudulently induced her to enter into the agreement by leading her to believe that it intended to occupy the property for an extended period of time—not for just one month. She claims that the trial court erred in failing to address this defense.

{¶ 14} "A settlement agreement is a contract designed to terminate a claim by preventing or ending litigation."  *Weckel v. Cole + Russell Architects*, 2013-Ohio-2718,

7.

994 N.E.2d 885, ¶ 20 (1st Dist.).  The law highly favors settlement agreements.  *Id.*  The Supreme Court of Ohio has addressed the standard to be applied in reviewing rulings on a motion to enforce a settlement agreement.  Because the issue is a question of contract law, an appellate court must determine whether the trial court erred as a matter of law.  *Continental W. Condo. Unit Owners Assn. v. Howard E. Ferguson, Inc.,* 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996).  "However, when parties dispute whether their respective actions were sufficient to satisfy the terms of a settlement agreement, the trial court is presented with a question of fact to decide," and we must defer to the trial court's resolution of factual questions.[2]  *Savoy Hosp., L.L.C. v. 5839 Monroe St. Assocs., L.L.C.,* 6th Dist. Lucas No. L-14-1144, 2015-Ohio-4879, ¶ 28.

{¶ 15} Here, the parties' dispute is limited to whether the provisions of (d) and (e) were conditions precedent or merely promises.  "A condition precedent is an event that must occur before an obligation in the contract will become effective."  (Citations omitted.)  *Evans, Mechwart, Hambleton & Tilton, Inc. v. Triad Architects, Ltd.,* 196 Ohio App.3d 784, 2011-Ohio-4979, 965 N.E.2d 1007, ¶ 14 (10th Dist.).  Where a condition precedent does not occur, a party is excused from performing the duty promised under the contract.  (Citations omitted.)  *Id.*  Whether a contractual term is a condition precedent or merely a promise to perform is a question of the parties' intent

---

[2] Here, the parties agreed to submit evidentiary binders to the court in lieu of holding an evidentiary hearing.  The court heard arguments of counsel at an October 24, 2014 proceeding.

8.

which must be ascertained "from the language of the particular provision, the language of the entire agreement, and the subject matter of the agreement." (Citations omitted.) *Id.*

{¶ 16} The law disfavors conditions precedent. *Id.* at ¶ 15. Generally speaking, the terms of an agreement will not be construed as conditions precedent unless the language clearly and unambiguously requires such a construction. *Kaufman v. Byers,* 159 Ohio App.3d 238, 2004-Ohio-6346, 823 N.E.2d 530, ¶ 28 (11th Dist.). "When possible, courts should construe promises in a bilateral contract as mutually dependent and concurrent, rather than one promise as a condition precedent to the other." *Id.* at ¶ 30.

{¶ 17} Here, we agree with MarineMax that (d) and (e) do not clearly and unambiguously constitute conditions precedent. To the contrary, the language of paragraph 3 of the agreement itself makes clear that they are promises. *See Campbell v. George J. Igel & Co.,* 2013-Ohio-3584, 3 N.E.3d 219, ¶ 19 (4th Dist.) (refusing to find that contractual provision was condition precedent because it was "not explicit enough to indicate that the parties intended to create a condition precedent"). Accordingly, we find no error in the trial court's conclusion that Nunnari was not entitled to repudiate the agreement.[3]

{¶ 18} As for Nunnari's fraud-in-the-inducement defense, while not explicitly addressed by the trial court, we cannot say that the trial court did not consider the issue in

---

[3] This is not to say that Nunnari could not have pursued damages for breach of the settlement agreement. *See Campbell* at ¶ 13 (acknowledging that where an agreement contains an exchange of promises as opposed to a condition precedent, the appellant may pursue a remedy for its breach).

9.

reaching its conclusion that "there is no evidence presented that would permit repudiation of the agreement." We interpret this to have been an implicit rejection of Nunnari's fraud-in-the-inducement defense, and we find no error in this conclusion.

{¶ 19} For these reasons, we find Nunnari's two assignments of error not well-taken.

### III. Conclusion

{¶ 20} We find Nunnari's assignments of error not well-taken, and we affirm the August 3, 2015 judgment of the Ottawa County Court of Common Pleas. Costs are assessed to Nunnari under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.               _____

                                                JUDGE

Thomas J. Osowik, J.          

                                        _____

James D. Jensen, P.J.                              JUDGE
CONCUR.

                                        _____

                                                JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.