[Cite as *Sabatine BK Dev., L.L.C. v. Fitzpatrick Ents., Inc.*, 2017-Ohio-805.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

SABATINE BK DEVELOPMENT, LLC

     Defendant-Appellant

-vs-

FITZPATRICK ENTERPRISES, INC.

     Plaintiff-Appellee

JUDGES:
Hon. Patricia A. Delaney, P.J.
Hon. W. Scott Gwin, J.
Hon. William B. Hoffman, J.

Case No. 2016CA00116

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Case No. 2015CV01095 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | March 6, 2017 |
| APPEARANCES: | |

For Defendant-Appellant

JOHN A. MURPHY, JR.
ROBERT J. MCBRIDE
Day Ketterer Ltd.
Millennium Centre-Suite 300
200 Market Avenue North
P.O. Box 24213
Canton, Ohio 44701-4213

For Plaintiff-Appellee

OWEN J. RARRIC
TERRY A. MOORE
JACQUELINE BOLLAS CALDWELL
Krugliak, Wilkins, Griffiths
& Dougherty Co., L.P.A.
4775 Munson Street, NW
PO Box 36963
Canton, Ohio 44735-6963

*Hoffman, J.*

**{¶1}** Defendant-appellant Sabatine BK Development, LLC ("Sabatine") appeals the May 13, 2016 Findings of Fact and Conclusions of Law entered by the Stark County Court of Common Pleas, which granted declaratory judgment in favor of plaintiff-appellee Fitzpatrick Enterprises, Inc. ("Fitzpatrick"), and entered judgment against Sabatine on its counterclaims.

STATEMENT OF THE FACTS AND CASE

**{¶2}** Fitzpatrick owns Thursday's Plaza, a shopping center located on Dressler Road NW, in Canton, Ohio. A number of tenants lease space from Fitzpatrick and operate their businesses within Thursday's Plaza. All of the leases between the individual tenants and Fitzpatrick include a provision for non-exclusive parking and use of the common roadways throughout the shopping center, thus obligating Fitzpatrick to allow tenants, their employees, customers, and invitees to use the common roadways and to park throughout the shopping center.

**{¶3}** In 2004, Fitzpatrick entered into a ten year lease with a company which built a Macaroni Grill restaurant on an out lot of the shopping center. The building covered approximately 6,800 square feet of the approximately 23,561 square feet (0.5414 acres) of land Macaroni Grill leased from Fitzpatrick. The lease provided Macaroni Grill with non-exclusive parking in the shopping center. When the lease expired in 2014, Macaroni Grill did not exercise its option to renew. Thereafter, Fitzpatrick made the Macaroni Grill site available for lease or sale.

{¶4}   Sabatine is a Youngstown area real estate investment company. Sabatine's agent, Stephen Taylor of Goodman Real Estate Services Group, became aware of the availability of the Macaroni Grill site and notified Sabatine about it.  Taylor informed Sabatine he could find a tenant for the building.

{¶5}   Taylor sent a Letter of Intent, dated October 29, 2014, to Fitzpatrick on behalf of Sabatine, which provided, "purchase shall include the real Property associated with the apx. 6,820 sq ft building, all F, F & E, all improvements thereon, all architectural plans, leases, engineering data, easements, warranties or guarantees, and materials used in connection with the operation of Property and in Seller's possession and easements for parking and access to the property."   The Letter of Intent did not identify any land to be transferred beyond the 6,820 square foot Macaroni Grill building, and did not request the buyer receive exclusive parking.

{¶6}   In order to sell the Macaroni Grill site to Sabatine, the parties understood Fitzpatrick would have to split off that property from the remainder of Thursday's Plaza. Sabatine's attorney drafted a proposed purchase offer. Under "A" of the recitals in the proposed purchase offer, "Property" was defined as follows:


"Seller is the owner of certain real property and buildings with an address of 4721 Dressler Rd. NW, Canton, OH 44718; situated in Stark County, tax map/parcel number 1620800, consisting of approximately 2.2 acres of land, which shall be subject to a mutually agreeable replat of the property, as depicted on Exhibit A (formerly the Macaroni Grill) attached hereto and made a part hereof," , together with all rights and appurtenances pertaining to such real property,

including, without limitation, any and all rights of Seller, if any, in any, in and to any and all adjacent roads, alleys, easements, streets and ways,; rights of ingress and egress thereto; strips and gores within or bounding such real property; profits, rights or appurtenances pertaining to such real property; mineral rights, and air and development rights; and all improvements and structures situated thereon (collectively, the "Property").

**{¶7}** Although the proposed purchase offer indicates "Exhibit A" is "attached hereto and made a part hereof", said exhibit was not attached to the document. Sabatine signed the proposed purchase offer without "Exhibit A" on January 14, 2015. Fitzpatrick refused to accept Sabatine's proposed purchase offer in the absence of "Exhibit A".

**{¶8}** Fitzpatrick contacted Cooper & Associates, LLC, a civil engineering and surveying firm, to provide a depiction showing the Macaroni Grill site split off from Thursday's Plaza. The depiction, which Cooper & Associates provided to Fitzpatrick on January 14, 2015, identified a transfer of 32,475 square feet, approximately .75 acres. Cooper & Associates confirmed the proposed split would meet all parking requirements as long as the purchase agreement provided non-exclusive parking and right-of-way access to the shopping center. Fitzpatrick was satisfied with the depiction and decided to offer the .75 acre lot for sale. As stated supra, the original Macaroni Grill site was .54 acres.

**{¶9}** After making significant changes to Sabatine's proposed purchase offer and attaching the Cooper & Associates depiction as "Exhibit A", Fitzpatrick signed the counteroffer and sent it to Sabatine's agent on January 15, 2015. Paragraph 29 of

Fitzpatrick's counteroffer provided: "Seller does hereby grant and convey to Buyer, Buyer's employees, representatives, customers and invitees, a permanent, non-exclusive right-of-way access and parking easement for the purpose of pedestrian and vehicular ingress, egress and parking over all access and entrance drives and over all parking areas of the Shopping Center."

**{¶10}** On May 13, 2015, two days before the end of the Extended Due Diligence Period, Sabatine submitted a counterproposal to Fitzpatrick's counteroffer. The counterproposal expanded the property boundaries to the north and south, and included a provision for exclusive parking which would result in the removal of parking spaces, which were available to all of the Thursday's Plaza tenants, from the shopping center field. The counterproposal required the transfer, in fee, of an access point in Thursday's Plaza, as well as the split off of the property from two separate parcels (parcel number 1620800 and parcel number 161500) although the counterproposal only identified parcel number 1620800. Fitzpatrick rejected Sabatine's counterproposal, which was the same counterproposal it had rejected a month earlier. Fitzpatrick asked whether Sabatine would accept the January 15, 2015 counteroffer for the sale of the .75 acre lot split depicted in the attached "Exhibit A". Sabatine's agent responded in writing "the buyer cannot accept this." In a letter dated May 18, 2015, Counsel for Fitzpatrick notified Sabatine the January 15, 2015 counteroffer was terminated.

**{¶11}** On May 28, 2015, Fitzpatrick filed a complaint for declaratory judgment, requesting the trial court declare the agreement between the parties was not an enforceable contract, and the agreement was terminated and/or void thus discharging the

parties from all of their obligations thereunder. Sabatine filed an answer and counterclaim for breach of contract, promissory estoppel, and breach of fiduciary duty.

{¶12} The trial court referred the matter to mediation, which proved unsuccessful. On October 9, 2015, the parties filed respective motions for summary judgment. Via Judgment Entry filed November 3, 2015, the trial court denied both motions. The trial court again referred the matter to mediation, which was again unsuccessful. The matter proceeded to bench trial on March 8-9, 2016.

{¶13} Via Findings of Fact and Conclusions of Law filed May 13, 2016, the trial court granted judgment in favor of Fitzpatrick on its complaint as well as on Sabatine's counterclaims. On the declaratory judgment claims, the trial court found there was never an enforceable agreement as there was no meeting of the minds. The trial court further found Sabatine's counterclaim for breach of contract failed based upon the findings and conclusions relative to the declaratory judgment claims. The trial court also found Sabatine failed to prove all of the elements of its claim for promissory estoppel. The trial court additionally found Sabatine did not present any evidence to establish the existence of a fiduciary duty owed by Fitzpatrick or any evidence of an alleged breach of that duty.

{¶14} Sabatine raises the following assignments of error:

I. THE TRIAL COURT ERRED BY DENYING SABATINE ITS CONSTITUTIONAL RIGHT TO TRIAL BY JURY.

II. THE TRIAL COURT ERRED BY CONCLUDING THAT THE PURCHASE AGREEMENT WAS NOT A VALID ENFORCEABLE AGREEMENT.

i. THE PURCHASE AGREEMENT INCLUDES ALL OF THE ELEMENTS OF A VALID, ENFORCEABLE CONTRACT.

III. THE TRIAL COURT ERRED BY FAILING TO GRANT SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, JUDGMENT TO SABATINE BASED UPON FITZPATRICK'S FAILURE TO NEGOTIATE IN GOOD FAITH TOWARDS A MUTUALLY AGREEABLE REPLAT AND ITS PREMATURE TERMINATION OF THE PURCHASE AGREEMENT.

i. FITZPATRICK PREMATURELY TERMINATED THE PURCHASE AGREEMENT.

ii. SEPARATE AND APART FROM THE DUTY TO ACT IN GOOD FAITH IS THE [SIC] SABATINE'S CLAIM THAT THE [SIC] FITZPATRICK ACTED IN BAD FAITH ENTITLING THE [SIC] SABATINE TO AN AWARD OF ATTORNEY'S FEES AND PUNITIVE DAMAGES ON ITS COUNTERCLAIM.

I.

{¶15} In its first assignment of error, Sabatine contends the trial court erred in denying Sabatine its constitutional right to a trial by jury. We disagree.

{¶16} "The right to a jury trial is not absolute. Where a plaintiff seeks primarily equitable relief with attendant and incidental money damages neither party is entitled to a trial by jury." *Pyromatics, Inc. v. Petruziello* (1983), 7 Ohio App.3d 131, 134, 454 N.E.2d 588, para. 20. "Specific performance of a contract is a distinctly equitable remedy." *Tesca*

v. *Hoffman,* 5th Dist. Richland No. 2009-CA-0058, 2010-Ohio-1114, para. 47, quoting *Quarto Mining Co. v. Litman* (1975), 42 Ohio St.2d 73, 87, 326 N.E.2d 676.

**{¶17}** In its Counterclaim, Sabatine asserted causes of action for breach of contract, promissory estoppel, and breach of fiduciary duty.  Therein, Sabatine alleged, in relevant part:

8. The Property is unique and unusual.  Monetary damages will not afford Defendant adequate relief.

9. The only just and equitable remedy for Plaintiff's breach is specific performance of the Agreement, i.e. Plaintiff sells the Property to Defendant.

* * *

13. Plaintiff's failure to perform as promised has damaged Defendant.

14. Injustice and irreparable injury to Defendant can only be avoided through the specific performance of the Agreement.

15. As a result of the Plaintiff's representations and Defendant's reliance thereon, Plaintiff should be compelled to consummate the real estate sale.

* * *

Wherefore, Defendant demands judgment against Plaintiff; that the Court order specific performance for the Plaintiff to sell the Property to Defendant; that the Court award Defendant its attorney fees and costs; that the Court award Defendant punitive damages; and that the Court award Defendant any other relief the Court deems just and proper.

**{¶18}** Sabatine's breach of contract claim is ancillary to its request for specific performance. Couching the request for specific performance as a breach of contract claim does not change the underlying character of the action so as to afford Sabatine the right to jury trial. Sabatine's additional denials and defenses also do not change the nature of the Counterclaim. The Counterclaim sought attorney fees, costs, and punitive damages which we find are intertwined with and incidental to its main requested relief of summary judgment; therefore, insufficient to confer the right to a jury trial under the facts of this case.[1]

**{¶19}** Sabatine's first assignment of error is overruled.

II, III

**{¶20}** In the second assignment of error, Sabatine argues the trial court erred in concluding there was never an enforceable agreement between the parties. In the third assignment of error, Sabatine submits the trial court erred in denying its motion for summary judgment or, in the alternative, not granting judgment in favor of Sabatine due to Fitzpatrick's failure to negotiate in good faith.

**{¶21}** The essential elements of a contract are an offer, acceptance, contractual capacity, consideration, a manifestation of mutual assent, and legality of object and of consideration. *Kostelnik v. Helper,* 96 Ohio St.3d 1, 2002–Ohio–2985, 770 N.E.2d 58, ¶ 16. "Mutual assent or 'a meeting of the minds' means that both parties have reached an agreement on the contract's essential terms." *Nguyen v. Chen,* 12th Dist. Butler No. CA2013–10–191, 2014–Ohio–5188, ¶ 43 (Citation omitted). To prove the existence of a

---

[1] We note Sabatine failed to point to where in the record it objected to the trial court's denial of a jury trial.

contract, written or oral, "a plaintiff must show that both parties consented to the terms of the contract, that there was a 'meeting of the minds' of both parties, and that the terms of the contract are definite and certain." *Episcopal Retirement Homes, Inc. v. Ohio Dep't of Indus. Rel.* (1991)*,* 61 Ohio St.3d 366, 369, 575 N.E.2d 134.

**{¶22}** An acceptance which changes the terms of the contract does not create a binding contract because it constitutes a counteroffer. *Foster v. Ohio State Univ.* (1987)*,* 41 Ohio App.3d 86, 88, 534 N.E.2d 1220, citing 1 Restatement of the Law 2d, Contracts, Section 59, at 145 (1981).

**{¶23}** Sabatine submitted a purchase offer to Fitzpatrick which indicated the Property would be subject to a mutually agreeable replat "as depicted on Exhibit A (formerly the Macaroni Grill) attached hereto and made a part hereof". Sabatine did not attach an "Exhibit A" with the proposed purchase offer despite the language indicating such was attached.

**{¶24}** Fitzpatrick was unwilling to accept the proposed purchase offer without "Exhibit A". Upon Fitzpatrick's request, Cooper & Associates rendered a depiction of the property which contemplated the transfer of approximately .75 acres. Fitzpatrick was satisfied with the depiction and decided to offer the .75 acre lot for sale. Fitzpatrick made significant changes to Sabatine's proposed purchase offer, attached the Cooper & Associates depiction as "Exhibit A", signed the counteroffer and sent it to Sabatine's agent. Sabatines's agent rejected the counteroffer. Months later, Sabatine submitted a counterproposal, a counterproposal Fitzpatrick had previously rejected. Fitzpatrick then withdrew its counteroffer.

**{¶25}** The trial court found when Fitzpatrick attached the Cooper & Associates depiction as "Exhibit A", Fitzpatrick incorporated a new term and materially modified Sabatine's offer. Sabatine did not accept Fitzpatrick's counteroffer. Like the trial court, we find there was never a meeting of the minds as the parties never agreed on an essential element of the transaction, to wit: the real estate to be transferred. The amount and location of the land to be transferred was material to the contract. "A contract for the sale of land must definitely point out the particular land to be conveyed or must furnish the means of identifying it with certainty." *Schmidt v. Weston* (1948), 150 Ohio St. 293.

**{¶26}** In *H & C Ag Servs., L.L.C. v. Ohio Fresh Eggs, L.L.C.*, 3rd Dist. Hardin No. 6-15-02, 2015 -Ohio- 3714, 41 N.E.3d 915, the Third District Court of Appeals found an enforceable agreement does not exist when an essential term is left to be determined by and "mutually agreeable" to the parties.

**{¶27}** The *H & C Ag Servs.* case arose from a dispute concerning the rights to remove chicken manure from egg-laying facilities. *Id.* at 2. The parties entered into an Agreement, which provided, in part: "Quantity. On tonnage per year, Bidder proposes to broker all available tonnage per year of manure. Specific quantity to be determined by and mutually agreeable [sic] both parties." *Id.* at 27. The Third District Court of Appeals noted, "the parties bargained to reserve quantity—an essential element of a contract for the sale of goods—for the future agreement of both parties following future negotiations." *Id.* at 45. Because under the Agreement, each party reserved an unlimited right to agree to the specific quantity of manure, "[i]t follow[ed] that, if one of the parties refuse[d] to agree to the specific quantity of manure, that party has no obligation to . . . sell manure, or, . . . purchase manure. *Id.* The Court refused "to disregard the sentence of the

Agreement reserving an essential element of the contract for future agreement," and concluded the Agreement was left without an enforceable term. *Id.* at par. 45- 46.

{¶28} Because the parties never identified the real estate to be transferred with requisite certainty, an essential element, we find the trial court did not err in concluding the parties did not have an enforceable agreement.

{¶29} Assuming, arguendo, Sabatine established the essential elements of the contract - offer, acceptance, and meeting of the minds – we, nonetheless, find the parties did not have an enforceable agreement.

{¶30} "A condition precedent is an event that must occur before an obligation in the contract will become effective." *Evans, Mechwart, Hambleton & Tilton, Inc. v. Triad Architects, Ltd.,* 196 Ohio App.3d 784, 2011–Ohio–4979, 965 N.E.2d 1007, ¶ 14. (Citation omitted.) Where a condition precedent does not occur, a party is excused from performing the duty promised under the contract. *Id.* (Citations omitted.) Whether a contractual term is a condition precedent or merely a promise to perform is a question of the parties' intent which must be ascertained "from the language of the particular provision, the language of the entire agreement, and the subject matter of the agreement." *Id.* (Citations omitted.)

{¶31} We find language of Sabatine's January 14, 2015 proposed purchase offer, "Seller is the owner of certain real property and buildings with an address of 4721 Dressler Rd. NW, Canton, OH 44718; * * * consisting of approximately 2.2 acres of land, *which shall be subject to a mutually agreeable replat of the property, as depicted on Exhibit A (formerly the Macaroni Grill) attached hereto and made a part hereof,"* imposes a condition precedent. (Emphasis added.)

**{¶32}** Fitzpatrick and Sabatine were unable to arrive at a "mutually agreeable replat of the property, as depicted on Exhibit A"; therefore, the condition precedent did not occur.  Because the condition precedent did not occur, the parties were excused from performing.

**{¶33}** Based upon the foregoing, we find the trial court did not err in concluding there was never an enforceable agreement between the parties. We further find the trial court did not err in denying Sabatine's motion for summary judgment or, in the alternative, not granting judgment in favor of Sabatine due to Fitzpatrick's failure to negotiate in good faith.

**{¶34}** Sabatine's second and third assignments of error are overruled.

**{¶35}** The judgment of the Stark County Court of Common Pleas is affirmed.

By: Hoffman, J.

Delaney, P.J.  and

Gwin, J. concur